OPINION OF THE COURT
George M. Hermann, J.
Petitioner commenced this licensee holdover proceeding on the ground that the tenant of record was deceased and the respondent no longer had permission or authority to remain in the subject premises.
The respondent was personally served with the 10-day notice to quit on May 2, 2005 and thereafter with the petition, dated May 19, 2005, on May 20, 2005.
On May 31, 2005, the respondent, appearing pro se, entered into a stipulation before a different judge which, in relevant part, reads as follows:
“1. Respondent consents to the entry of a final judgment of possession in favor of the Petitioner, warrant to issue forthwith, execution stayed subject to the terms set forth herein.
“2. Respondent agrees to voluntarily vacate the subject premises on or before 11/30/05 . . .[1]
“5. W/out prejudice to a hearing before I.H.O. [Impartial Hearing Officer] at 250 Broadway.” [2]
The respondent, now represented by counsel, seeks a further stay of the execution of the warrant to enable him to have a hearing on his remaining family member claim contending that “the only meaning that can be given to this language [1i 5, supra] is that respondent’s agreement to vacate is without prejudice to his right to an administrative hearing.”[3]
*901 Questions Presented
1. Does the petitioner’s consent to allow the respondent the opportunity to obtain an administrative hearing, in this case to determine whether he can succeed to the premises as a remaining family member, supercede and/or nullify the respondent’s obligation, voluntarily entered into, to vacate the subject premises by a date certain (now expired), which would result in an indefinite stay of execution beyond that agreed upon until the entire administrative process is completed?
2. Under the facts of this case, where the respondent initially consented to a six-month period to vacate the premises and now, almost one year after the entry of the judgment, seeks a further stay of the execution of the warrant, is it an abuse of discretion to grant the respondent’s motion?
For the reasons set forth below, the court answers the first question in the negative and the second question in the affirmative.
Factual Background
The tenant of record, Rebecca Jones, who resided at 375 Blake Avenue, Apartment 2H, Brooklyn, New York 11212, died on April 6, 2002.
On March 14, 2003, the New York City Housing Authority (NYCHA) sent the respondent a letter captioned “Important Notice — Remaining Family Member Claim” informing him that he was a licensee subject to eviction and that he was entitled to a grievance proceeding on the issue of whether he may be entitled to keep the apartment and be offered a lease if he requested such a grievance in writing within 14 days of his receipt of said notice.
On August 4, 2003, the respondent participated in a grievance meeting requesting that he be given a lease to the subject apartment.
On February 11, 2004, the following disposition of the grievance hearing was issued denying the respondent’s request to be deemed a remaining family member entitled to a lease:
“Nature of and Reasons for Proposed Disposition of Complaint:
“When licensee returned to the household, no permission was ever requested or given by management.
“Summary of Discussion:
*902 “Rebecca Jones deceased mother, of Thomas Witherspoon, prior to her death did not request permission for her son to re-join the household. Thomas Witherspoon was removed from the household in December of 1990. Therefore he is an unauthorized occupant.”
The notice of disposition contained a “Note to Grievant” stating that the respondent, if not satisfied with the disposition, may request in writing, within 10 working days of the notice of disposition, a review by the District Office.
On April 21, 2004, the NYCHA Borough Administrator sent the respondent a letter informing him that his grievance hearing was going to be reviewed and that he could submit any written documentation for consideration by May 5, 2004 and must contact the Administrator by said date if he wanted a personal interview.
A year after the May 5, 2004 deadline for submission of documentation and/or request for a personal interview, the instant holdover proceeding was commenced without any further action being taken regarding the respondent’s status as a remaining family member.
At the time the respondent entered into the above-referenced stipulation at issue herein, he was well aware of the fact that no determination had been reached on his alleged right to succeed to the premises. Although he appeared pro se on May 31, 2005, the respondent was still able to negotiate a favorable stipulation that gave him a full six months before being required to vacate his mother’s premises (generally considered to be the maximum period allowed under the law [see, RPAPL 753 (1)]) while at the same time preserving his right to challenge his status as a licensee, which, if successful, would vitiate the underlying proceeding, the stipulation and the judgment entered thereon.
Subsequently, on January 18, 2006, the respondent obtained an order to show cause (OSC), returnable March 9, 2006, stating: “I have not found a place to live.” Respondent failed to appear on the return date.
On March 16, 2006, the respondent obtained the instant OSC, once again stating: “I’ve been looking for [an] apartment but haven’t found one.” “I need more time at least 90 days to move out.” Thereafter, on May 3, 2006, the respondent’s newly retained counsel submitted a “Supplemental Affirmation” in an effort to forestall the eviction while the respondent pursues his administrative hearing, an issue that the respondent himself failed to raise in either of his two OSC affidavits.
*903 Relevant Statutes
RPAPL 753 (1) (Stay where tenant holds over in premises occupied for dwelling purposes in city of New York) states in pertinent part:
“In a proceeding to recover the possession of premises in the city of New York occupied for dwelling purposes, . . . upon the ground that the occupant is holding over and continuing in possession of the premises after the expiration of his term and without the permission of the landlord, . . . the court, on application of the occupant, may stay the issuance of a warrant and also stay any execution to collect the costs of the proceeding for a period of not more than six months, if it appears that the premises are used for dwelling purposes; that the application is made in good faith; that the applicant cannot within the neighborhood secure suitable premises similar to those occupied by him and that he made due and reasonable efforts to secure such other premises, or that by reason of other facts it would occasion extreme hardship to him or his family if the stay were not granted.” (Emphasis added.)
Civil Practice Law and Rules § 2201 (Stay) reads as follows: “Except where otherwise prescribed by law, the court in which an action is pending may grant a stay of proceedings in a proper case, upon such terms as may be just.” (Emphasis added.)
Discussion and Analysis of the Law
The thrust of the respondent’s argument is one which has seen various results from different courts in the interpretation of RPAPL 753 (1) regarding the “six month” limitation of a stay when juxtaposed against the broadly worded language of CPLR 2201. While the former statute places constraints on the court’s authority and discretionary powers, the latter statute contains no specific restraints on the court provided that the terms of any stay “be just.”
While it has become the common practice in the Housing Court to view RPAPL 753 (1) as completely removing the court’s jurisdiction to grant any further stays beyond six months after the entry of a final judgment or the issuance of a warrant based upon that judgment in holdover proceedings, the statute, as set forth above, actually makes no reference whatsoever to staying the “execution” of the warrant, just the “issuance” thereof. As can be seen, the word “execution” in said statute makes no ref *904 erence to its application vis-á-vis the warrant, but merely refers to the collection of the “costs of the proceeding” and not the recovery of the subject premises for which the judgment of possession is entered. Notwithstanding this omission, it has become routine for courts to interchange the terms “issuance of the warrant” and “execution of the warrant” yielding the same result, i.e, that the total period of a stay of the “execution” of the warrant cannot exceed six months inclusive of the issuance of the warrant.
For example, in Parkchester Apts. Co. v Rollieson (NYLJ, Feb. 6, 1996, at 25, col 1 [App Term, 1st Dept]), the Appellate Term held: “In residential holdover proceedings the court may stay execution of the warrant for a period not exceeding six months. ‘Stays granted should not be for an eternity.’ ” (Emphasis added and citation omitted.)
As stated in 3 Dolan, Rasch’s Landlord and Tenant — Summary Proceedings (§ 47:12, at 236 [4th ed 1998] [Stays — In Dwelling Holdover Proceeding in New York City; Inability to Find Other Accommodations; Breach of Lease]): “It has been held that where a tenant receives a stay under this statute [RPAPL 753 (1)] for either the full period or in excess of the period permitted by the provisions thereof, the court is without power thereafter to grant a further stay.”
In Radol v Centeno (NYLJ, Apr. 26, 1995, at 32, col 6), the respondents, represented by counsel, stipulated to a final judgment of possession against them and consented to the issuance of the warrant with the execution thereof stayed six months, acknowledging that said stay represented the full length of time the court had the authority to grant. Respondents then sought an additional stay after the six-month period had expired. In denying the motion, the court noted:
“In the present case, the execution of the warrant of eviction has already been stayed in excess of six months. Section 753(1) of the RPAPL [limits] the power of the court to grant a stay to no more than six months . . . [T]he Court was already without power to act further. Thus there is no possibility whatever that the warrant may be vacated for good cause.” {Id. at 33, col 2.)
It is clear from the language in Radol (supra) that the court gave a strict interpretation to the six-month rule in determining that it had no authority to grant any further stay or to vacate the warrant upon an application made beyond the six-month stay period.
*905 The respondent herein seeks to have this court invoke the broad stay powers of CPLR 2201 (supra) and cites the following two cases, Landau v Levine (NYLJ, Mar. 1, 1995, at 30, col 2) and Niego Props., Ltd. v Schuette (NYLJ, May 22, 2002, at 25, col 4), in support of his position that this court does, in fact, have the authority and discretion to grant a further stay, notwithstanding that the respondent was already given a full six-month stay at the time he consented to the entry of a final judgment of possession and that almost an entire year has elapsed since the entry of that judgment and the issuance of the warrant thereon.
In Landau (supra), the court was faced with a similar situation as the case at bar. There, the parties agreed to a judgment of possession with the warrant to issue forthwith and execution stayed for one year. A few days shy of the expiration of that one-year stay, the respondent tenants sought a further six-month stay. The respondents argued that
“[w]hile section 753 proscribes a stay of issuance of the warrant for more than six months, it does not limit the Court’s authority to stay execution of the warrant. Accordingly, the expansive qualities of section 2201 of the CPLR permit the Court to grant the requested 6 month stay of execution of the warrant.” (Landau at 30, col 3.)
The petitioners contended that RPAPL 753 (1) “clearly proscribes any further extension of the one year stay already granted” and that “[t]o grant this request is to open [a] pandora’s box to every tenant in New York City. Such would clearly be contrary to the requirements and philosophy underlying both section 753 of the RPAPL and section 2201 of the CPLR.” (Id.)
In analyzing the two statutes, the court found that CPLR 2201 was the applicable statute since RPAPL 753 (1)
“speaks only to extensions of the stay of issuance of the warrant and not to execution of the warrant. The only limitations on the court regarding the granting of an application for a stay of execution of the warrant would be the strictures of section 2201 itself. That is, that a stay be granted and ‘in a proper case upon such terms as may be just’.” (Id. at 30, col 4.)
Finding that the tenants had been given “ample time” in the stipulation to find an apartment, the court declined to grant any further extension.
*906 In Niego Props., Ltd. (supra), the court held:
“While the issuance of a warrant . . . terminated the landlord-tenant relationship between the parties, it did not divest the Court of jurisdiction to stay execution of same. This is so because a summary proceeding is ‘pending’ within the meaning of CPLR 2201 until the warrant is executed. In view of the foregoing, this Court in fact has authority to stay execution of a warrant to remove in a proper case. Whether this authority to stay execution of a warrant should be exercised in this case must turn upon the facts presently before the Court.” (Citations omitted.)
In that case, the court granted a brief stay beyond the time set forth in the “so-ordered” stipulation which, itself, exceeded six months. It should be noted, however, that the court in Niego Props., Ltd. (supra) was not limited to the constraints of RPAPL 753 (1) as its jurisdiction was outside the City of New York. Prior to September 1, 1967, RPAPL 751 (4), which pertained to holdover proceedings outside of the City of New York, limited stays up to a period of four months. Since the expiration of the provisions of that section, the courts outside the City of New York are only bound by the terms of CPLR 2201. Therefore, the Niego Props., Ltd. case is not truly analogous to the instant matter. However, even in holdover proceedings conducted outside the jurisdiction of the City of New York, the courts are cognizant that there must be some limitations on their discretion to stay issuance and/or execution of a warrant.
“For residential premises outside New York City there used to be a similar statute [to RPAPL 753 (1)] for staying a warrant in a holdover proceeding, but it lost effect in 1967. This would at first blush suggest that a stay in that situation is not authorized at all, but it has been held that since the lower courts that entertain summary proceedings outside New York City have by statute the general power to stay their proceedings, this general power is source enough to stay the warrant in a holdover summary proceeding. In view of the legislative history, however, the stay should not exceed the period previously allowed by statute, which was four months for residential premises outside New York City.” (Siegel, NY Prac § 580, at 960-961 [3d ed 1999] [Enforce *907 ment in Summary Proceeding; Warrant and Stay] [emphasis added].)
In this court’s experience, over a period of 15 years, virtually every holdover proceeding that resulted in a judgment in favor of the petitioner landlord, the issuance of a warrant has either been forthwith or stayed for a short period, generally not more than 30 days, and the execution of that warrant would be stayed for various intervals up to a combined total of not more than six months, with few exceptions.
As further stated in Siegel (§ 580, at 960):
“[Pursuant to RPAPL 753 (1)] the court can stay issuance of the warrant for up to six months. It grants the stay, however, only on condition that the tenant deposits with the court the rent — or the court-fixed value of reasonable use and occupation — for the period of the stay. Often the court will allow the stay in spurts of several weeks at a time, or a month or two, building up to the six months, rather than award the whole six-month period in one order. The purpose is to spur the tenant’s efforts to seek housing elsewhere, requiring fresh application for continuance of the stay from time to time.” (Emphasis added.)
In Matter of New York City Hous. Auth. v Gantt (57 Misc 2d 447 [1967]), the respondent sought to vacate the court’s final order, after trial, which- granted a stay a few days beyond the six-month period. The court denied the application requesting a new trial.
“[T]he tenants were granted a stay by this court on September 26, 1966, up to and including March 31, 1967, a period slightly exceeding six months. Thereafter, the landlord stipulated with the tenants for an extension of the stay up to and including May 31, 1967. Prior to the expiration of the latter date, the present application was brought on behalf of the tenants. The authority of this court to grant a stay of issuance of the warrant after a final judgment is limited to ‘a period of not more than six months’. (Real Property Actions and Proceedings Law, § 753.) This maximum period, prescribed by law, may not be exceeded by the court has now expired.
“Moreover, the application must fail because the tenants are guilty of laches in waiting almost eight *908 months after the trial of the proceeding to apply for a new trial on the merits. In addition, the tenants entered into and accepted the benefit of a stipulation made with the landlord for a further extension of time after March 31, 1967, and cannot now be heard to challenge the final judgment after having secured the benefit of an additional extension of time based thereon.” (Id. at 450-451 [citations omitted].)
The Appellate Division, Second Department, addressed the stay of the issuance of a warrant in Newman v Sherbar Dev. Co. (47 AD2d 648 [1975]), wherein it modified the Supreme Court’s finding, after a nonjury trial, of a combined action for a declaratory judgment and summary proceedings transferred from the Civil Court, that the petitioner was entitled to warrants of eviction. The Supreme Court entered a judgment on May 29, 1974 and the Appellate Division “on the facts and in the exercise of this court’s discretion in the interest of justice” further stayed the issuance of the warrants in the summary proceedings to July 1, 1975.
“Under section 753 of the Real Property Actions and Proceedings Law a stay of the issuance of a warrant in a holdover summary proceeding may be allowed for a period not to exceed six months. In the granting of equitable relief, the court may mold its relief to accord with the exigencies of the case. In the light of the prevailing tight market for apartment rentals, we find the exigencies of this case equitably require the conditional stay granted by the modification herein of the judgment.” (Id. at 648 [citations omitted].)
It is interesting to note that there is no mention in that decision as to whether the Supreme Court stayed the issuance of the warrants and/or for what period of time; it merely states that the “petitioner in the proceedings is entitled to warrants of eviction.” (Id. [emphasis added].) Nor does the Appellate Division make any reference as to whether the execution of the warrants are to be stayed after issuance.
Thus, while the Appellate Division specifically acknowledged the six-month limitation of RPAPL 753 (1), it used its “equitable” powers to “further” stay the issuance of the warrants *909 without any reference to CPLR 2201.[4] This decision actually opens the door to multiple stays beyond the initial six-month stay period, provided that each subsequent stay does not, in and of itself, exceed six months — a result that appears to run contrary to the intent of RPAPL 753 (1).
Following the lead in Newman (supra), the court in Bacchus v Bascombe (Civ Ct, Kings County, June 28, 2001, Index No. L&T 91543/00) granted an eight-week stay of execution beyond an already stipulated additional two-month stay, which exceeded the initial stay of 5x/2 months, and concluded that the “total” time for a stay may exceed six months under the proper circumstances.
“RPAPL 753 makes clear that any stay granted by a Court upon application by the occupant can only be for a ‘period of not more than six months’. What is not clear is whether this six month period is the amount of time in total that the Court can stay the warrant from entry of judgment. Or are additional stays possible (not to exceed six months as per RPAPL 753) after the six month period post-judgment, upon application by the occupant provided all criteria are met and the Court does not abuse its discretion?” (Id. [emphasis added].)[5]
Accordingly, this court finds that under compelling circumstances it can issue a stay of the execution of the warrant of eviction of no more than six months upon application by the respondent — even if by issuing such a stay the total time elapsed might exceed six months. Given the statutory language of RPAPL 753, such a stay should not be excessive, and only done in extraordinary circumstances.
Conclusion
As can be ascertained from the above discussion and analysis of the statutes and cases, there appear to be clear differences of opinion as to the application of RPAPL 753 (1), especially in light of the nebulous language of CPLR 2201.
While RPAPL 753 (1) limits the stay of the “issuance” of a warrant to a six-month period, does this leave open the possibil *910 ity for the indefinite stay of its execution? Does CPLR 2201 give the court carte blanche to exceed the six-month time frame “in a proper case, upon such terms as may be just,” which are completely subjective standards, notwithstanding the express language that it may only be utilized “[e]xcept where otherwise prescribed by law”? This prohibition, it could be argued, pertains directly to the restrictive wording of RPAPL 753 (1). Had the Legislature intended that CPLR 2201 apply in all instances, it would not have contained this limiting phrase. In lieu thereof, it would have incorporated the following opening phrase: “Notwithstanding any other provision of the law to the contrary.”
As there is no memorandum of legislative intent or Governor’s memorandum printed in McKinney’s Session Laws of 1962 with regard to section 21 of chapter 312 of the Laws of 1962, which created RPAPL 753, it becomes a matter of conjecture and usage over a period of time as to whether the six-month limitation was intended to be inclusive or exclusive of the execution of the warrant after issuance. Had the Legislature intended that the stay provisions in holdover proceedings be guided only by the court’s discretion, on a case-by-case basis without more, it would have ultimately eliminated the six-month limitation for such proceedings within the City of New York as it did with the four-month limitation for cities outside of New York.
Another indication that RPAPL 753 (1) was intended to operate independently of CPLR 2201 is the following statement contained in the Bill Jacket for chapter 312 of the Laws of 1962, by State Senator George H. Pierce, Chairman of the Senate Judiciary Committee, in his memorandum supporting the bill sent to the Governor’s Counsel on March 16, 1962:
“This bill, in its first 15 sections, harmonizes the Real Property Law with the proposed Civil Practice Law and Rules . . . and the remainder^ which includes section 21,] of the bill transfers provisions relative to real property actions from the Civil Practice Act [CPA] to the Real Property Actions and Proceedings Law . . . without substantial change.
“The proceedings transferred from the Civil Practice Act include: . . . Summary proceedings— Article 7.”
As previously noted, tradition and custom and usage have dictated that stays of “execution” of a warrant in holdover *911 proceedings will generally not exceed six months, inclusive of the issuance of the warrant. Barring further clarification by the Legislature and/or the appellate courts, this seems to be a reasonable and practicable approach in disposing of such matters. In those instances where exceptional, extenuating or exigent circumstances warrant a different result, the courts, as has been demonstrated, can, and will, fashion a remedy to bring about just results.
Upon review of the facts of this case, as previously set forth, this court believes that it would be an abuse of discretion to grant any further stay of the execution of the warrant. Not only did the respondent voluntarily agree to vacate the subject premises at the end of a six-month period, he reaped the unintended benefit of an additional six months as a result of the petitioner’s inaction in pursuing an eviction.
The court does not agree with the respondent’s argument that his stipulated right to obtain an administrative hearing was intended to create an indefinite stay of execution of the warrant beyond the initial six-month period. Nor has the respondent presented any compelling reasons, other than his unsubstantiated statements that he needs more time to find another apartment, which are sufficient to meet the criteria set forth in RPAPL 753 (1) to warrant the relief requested. Moreover, the issue of the respondent’s status as a remaining family member has been pending for over three years, and, as stated in footnote 3 (supra), the respondent took no affirmative steps during this period to seek any administrative appeals or CPLR article 78 review of the initial denial of his grievance held in August 2003. The respondent has had more than ample time to pursue his grievance upon receipt of the notifications he received in February and April of 2004. Any further stay at this juncture would be highly prejudicial to the petitioner, notwithstanding its own failure to act in a timely fashion upon the expiration of the stipulated stay period.[6]
*912 Therefore, the court declines to use its discretionary powers to afford the respondent any further extension of the previously negotiated stay, which has already been doubled in time by the laches of both parties, inuring to the benefit of the respondent. (See, Landau v Levine, supra; Matter of New York City Hous. Auth. v Gantt, supra.)
Accordingly, the motion for an additional stay of the execution of the warrant is denied and all stays are vacated.

. The vacate date was six months after the entry of the judgment.

. Respondent claims to be a remaining family member (son) entitled to succession rights.

. As set forth in the “Factual Background” portion of this decision, the respondent actually had an administrative hearing regarding his status as a remaining family member on August 4, 2003. Subsequent to an unfavorable disposition and prior to the instant motion, the respondent took no further action to pursue his claim that he is entitled to succession to the subject premises.

. The New York City Housing Court is a statutory court with limited jurisdiction that does not include equitable relief unless otherwise specifically granted by law.

. The court here uses the word “any” and does not distinguish between stays for the “issuance” and “execution” of the warrant.

. In Matter of MacLeod v Shapiro (20 AD2d 424, 428 [1st Dept 1964]), the Court stated: “It has been held that a stay may be granted in summary proceedings for a ‘reasonable time’ . . . Stays granted should not he for an eternity. Judicial power should not be so abused.” There, the Appellate Division found that a period of five months was longer than a “reasonable time” for which a stay of a summary dispossess proceeding could be granted.